# New York Marine Court.

## Special Term—March, 1877.

# DUDLEY W. FERGUSON *against* BENSON J. AUSTIN.

The unreliableness of expert testimony, practically demonstrated.
Motion for leave to discontinue without costs or upon terms, under certain circumstances, denied.

*Joseph A. Welch*, for the motion.

*Elihu Root*, opposed.

McAdam, J.—The defendant herein, who is a manufacturer and dealer in jewelry, in December, 1871, at the city of New York, sold to the plaintiff's wife a brilliant jewel, or precious stone, called a sapphire, for $430, and agreed to mount it in a gold ring with other brilliant stones for an additional sum of $334. In January, 1872, the ring, with its costly settings, was delivered to the plaintiff, who accepted and paid for it. In the summer of 1873, while in Leamington, England, the plaintiff and his wife were informed by a jeweler that the stone was not a sapphire, but a doublet, having only a nominal value. The plaintiff shortly afterward visited Paris, from which city he forwarded the ring, in a sealed package, to the defendant, in care of George E. Hodges, a friend in New

York, who delivered it to the defendant. Hodges testifies that upon presenting the ring, the defendant and his brother examined it. The latter at once pronounced the stone a doublet, while the defendant, who seemed in doubt about it, said he wished to see the importer before he could make any definite arrangements about taking back the ring or refunding the money paid for it. The same witness testifies that the defendant also said that it was possible that in handling the stones, the doublet may have been given to him by the importer. It was also suggested that the stone might have been changed while in the hands of another jeweler for repairs, and there was some evidence showing that the gold work in the setting of the blue stone was not the style of work made by the diamond-setter who set the original, and that it had been operated upon by some other workman since it was originally made. Alexander Rumrill, a jeweler of fifty years' experience, testified that the stone was an imitation of sapphire commonly known as a doublet. Mr. Klein, a jeweler of thirty-five years' experience, mounted the stone in question, and testified that the stone he mounted looked different from the one then in the ring; that the one he mounted was a real sapphire stone, while the one in the ring was a doublet. Theodore Austin, defendant's brother, testified that he was a practical jeweler of twelve years' experience, and of "splendid schooling," and that the stone in the ring was a doublet, and not the one which the defendant set in the ring.

Joseph L. Austin, another jeweler of twelve years' experience, testified that he set the jewels in the ring, and that the stone he set was a real sapphire, while the one in the ring was a doublet. Other professional jewelers testified as experts, and concurred in the opinion expressed by the preceding witnesses. TAYLOR, in his work on evidence (vol. 1, p. 73), speaking

Ferguson *v.* Austin.

of this kind of testimony, says: "Perhaps the testi-
mony which least deserves credit with a jury is that of
skilled witnesses. These gentlemen are usually re-
quired to speak, not to facts, but to opinions; and
when this is the case it is often quite surprising to see
with what facility and to what an extent their views
can be made to correspond with the wishes or the in-
terest of the parties who call them. They do not, in-
deed, willfully misrepresent what they think, but their
judgments become so warped by regarding the subject
in one point of view that even when conscientiously
disposed they are incapable of expressing a candid
opinion. Their belief becomes synonymous with faith
as defined by the apostle, and it too often is but the
substance of things hoped for—the evidence of things
not seen." Without casting the slightest reflection
upon the good faith of either of the witnesses, the re-
marks of Mr. TAYLOR find strong corroboration in what
turns out to be the utter unreliability of the expert
evidence in this case. Upon the close of the testimony
(which was taken by a stenographer, whose minutes
are very voluminous), the defendant's counsel requested
that the stone might be removed from the ring for ex-
amination, in consequence of a suggestion made to the
defendant that the stone in the ring might be genuine.
The respective counsel, by arrangement made on the
22nd of January, 1877, accompanied the referee to a
disinterested diamond-setter, and had the stone re-
moved from the ring, and then submitted the stone to
examination and test by a lapidary and a number of
expert jewelers, as well as by one of the original ex-
pert witnesses for the plaintiff, who all, after careful
examination and tests, pronounced the stone genuine.
Upon this unexpected discovery the plaintiff found
that his charge of deceit was unfounded, and that
the only course open to him was to retire from the
contest. His counsel has therefore made applica-

tion for leave to discontine without costs, or upon what he calls equitable terms. The action has been ably prosecuted and defended. Neither time nor expense has been spared, and the referee's and stenographer's fees have rapidly accumulated. These fees, with the taxable costs of the action, exceed the price of the disputed stone. The question of costs has, therefore, become one of importance. The plaintiff asks relief, upon the ground that he was innocently led into the litigation by the advice and upon the opinions of the professional experts who were honestly mistaken. He claims that his belief was confirmed by the conduct of the defendant and his employees, whose acts and declarations were construed by him into an admission that the stone was not a sapphire, but a doublet, which had, by some means unknown to them, been substituted in place of the genuine sapphire sold by the defendant, and that the plaintiff expected to meet this issue upon the trial, and no other. The plaintiff insists that the defendant is in this way partially responsible for the litigation ; but the proofs put the responsibility upon the error in judgment of what are known in law as professional experts, whose advice should have prevented the bringing of the present groundless action. If I had the power to mulct these unreliable experts in the entire cost of the litigation caused by their blundering opinions, I would gladly do so. The law has confined the consequences, however, to the immediate parties to the record, and I am merely to pass upon the question which of these two ought to bear the burden. Getting down to this single question, it appears that the defendant has been wrongfully charged with deceit and his business integrity assailed. In his answer he denied the fraud and alleged that the stone he sold was genuine. He was innocent of the charge made against him. The plaintiff, who is now

satisfied of this, desires to correct his error by retiring from the litigation. He ought to do so gracefully. The *amende honorable* due to the defendant can be made by paying all the expenses incurred, and not otherwise. No reason has been presented which appeals to the discretion of the court to allow a discontinuance except in the ordinary way, and upon payment of the usual costs. The motion for leave to discontinue without costs will therefore be denied, and the defendant will be allowed to tax a full bill.